JS-6

1
2
3
4
5
6
7

8          UNITED STATES DISTRICT COURT

9          CENTRAL DISTRICT OF CALIFORNIA

10

11  IN RE CACHET FINANCIAL          Case No. 2:21-cv-08778-FLA
    SERVICES, A CALIFORNIA          Bankr. Case No. 2:20-bk-10654-VZ
12  CORPORATION,                    Adv. Pro. Case No. 2:21-ap-01187-VZ

13                  Debtor/Plaintiff
                                    **ORDER DENYING DEFENDANT'S**
14        v.                        **MOTION TO WITHDRAW**
                                    **REFERENCE OF ADVERSARY**
15                                  **PROCEEDING TO BANKRUPTCY**
                                    **COURT [DKT. 1]**
16  THE BANCORP BANK, A
    DELAWARE-CHARTERED
17  BANKING INSTITUTION,

18                  Defendant.

19
20
21
22
23
24
25
26
27
28

1

1

**RULING**

2

Before the court is Defendant The Bancorp Bank's ("Bancorp" or "Defendant")

3

Motion to Withdraw Reference of Adversary Proceeding to Bankruptcy Court

4

("Motion").  Dkt. 1 ("Mot.").  Debtor and Plaintiff Cachet Financial Services

5

("Cachet" or "Plaintiff") opposes the Motion.  Dkt. 10 ("Opp'n").  On January 23,

6

2022, the court found this matter appropriate for resolution without oral argument and

7

vacated the hearing set for January 28, 2022.  Dkt. 14; *see* Fed. R. Civ. P. 78(b); Local

8

Rule 7-15.

9

On September 25, 2022, Defendants Dime Community Bank ("Dime Bank"),

10

John Romano ("Romano"), and Yuriy Rubinov ("Rubinov") filed a collective Joinder

11

to Bancorp's Motion.  Dkt. 18.

12

For the reasons stated herein, the court DENIES Bancorp's Motion in its

13

entirety.[1]

14

**BACKGROUND**

15

**I.    Factual Background[2]**

16

Cachet was a national financial services company focused on processing

17

Automated Clearing House ("ACH") transactions and providing related services in the

18

payroll industry.  AP FAC ¶ 5.  Cachet contracted with payroll processing companies,

19

referred to as "Remarketers," under Remarketer Agreements to provide payroll ACH

20

transactions.  *Id.* ¶ 40.  Bancorp is a Delaware chartered commercial bank and a

21

_____

22

[1] For purposes of this Motion, the court will cite filings in: (1) *In re Debtor Cachet*

23

*Financial Services*, Case No. 2:20-bk-10654-VZ (Bankr. C.D. Cal.) (the "Bankruptcy Action") as "BA Dkt. #"; (2) *Cachet Financial Services v. The Bancorp Bank et al.*,

24

Case No. 2:21-ap-01187-VZ (Bankr. C.D. Cal.) (the "Adversary Proceeding") as "AP Dkt. #"; and (3) *The Bancorp Bank v. Advanced Payroll Solutions, Inc. et al.*, Case

25

No. 1:19-cv-02088-MN (D. Del.) (the "Interpleader Action") as "IA Dkt. #."

26

[2] On May 31, 2022, Cachet filed a First Amended Complaint ("FAC") in the

27

Adversary Proceeding.  AP Dkt. 11 ("AP FAC").  These factual allegations are stated in this Order only to provide background regarding the parties' dispute and do not

28

represent findings of fact by this court.

1    Federal Deposit Insurance Corporation ("FDIC") insured institution.  *Id.* ¶ 6.  Bancorp
2    is also an Originating Depository Financial Institution ("ODFI") that is permitted to
3    conduct ACH transactions pursuant to the National Automated Clearing House
4    Association ("NACHA").  *Id.*  On or around August 4, 2010, Cachet and Bancorp
5    entered into an ODFI Agreement ("ODFI Agreement"), whereby Bancorp agreed to
6    act as Cachet's ODFI and facilitate Cachet's ACH transactions for Cachet's
7    Remarketer clients.  AP FAC ¶ 45; Dkt. 1-2 ("Summers Decl."), Ex. A.

8           Cachet alleges that beginning in the summer and fall of 2019, several of its
9    clients engaged in fraudulent conduct that led ultimately to the parties' dispute.  *See*
10   AP FAC ¶¶ 53–57, 67–101.  According to Cachet, around August and September of
11   2019, Cachet's client, MyPayroll HR ("MPHR"), and its principal, Michael Mann
12   ("Mann"), "manipulated" and/or "altered" Cachet's batch file specifications—"the
13   instructions that dictate the direction, timing and flow of funds"—to steal more than
14   $26 million from Cachet's accounts (the "MPHR Incident").  *Id.* ¶¶ 53–56; BA Dkt.
15   511 (Am. Disclosure State.) at 5–6.

16          Around October 2019, Bancorp informed Cachet about suspicious activity
17   occurring with another of Cachet's clients' accounts.  AP FAC ¶¶ 67–102.  Cachet
18   alleges Joshua Rothenberg ("Rothenberg") and/or Henry Kauftheil ("Kauftheil")
19   caused batch files to be uploaded to Cachet's servers that caused the disbursement of
20   approximately $21 million from Cachet's settlement account to accounts controlled by
21   Cachet's clients DD Care Management LLC, a New York limited liability company,
22   and DD Care Management LLC, a Florida limited liability company (collectively,
23   "DD Care"), without a corresponding credit to Cachet's accounts, resulting in a multi-
24   million-dollar theft (the "DD Care Incident").[3]  *Id.*; BA Dkt. 511 at 7.  According to
25   Cachet, this was the result of an ongoing fraudulent scheme perpetrated by

26
27   _____
28   [3] Rothenberg, Kauftheil, and DD Care are Defendants in the Adversary Proceeding.
     AP FAC ¶¶ 7–11.

1    Rothenberg and Kauftheil, assisted by Defendant Dime Bank.  AP FAC ¶¶ 62–102.

2         On October 23, 2019, Bancorp unilaterally terminated the ODFI Agreement

3    with Cachet and froze the funds in Cachet's accounts with Bancorp (the "Stake").  *Id*.

4    ¶ 107.  In the Notice of Termination letter, Bancorp stated Cachet "reversed

5    approximately $26 million in ACH credit transactions to employee and corporate

6    accounts associated with MPHR, due to MPHR's failure to fund such transactions," in

7    violation of NACHA rules.  Summers Decl., Ex. B.  According to Bancorp, this

8    resulted in "(i) a funding exposure of $26 million, (ii) Bancorp being compelled to

9    report the matter to its banking regulator, the [FDIC], (iii) Bancorp issuing letters of

10   indemnity to over 1,100 RDFIs, and (iv) NACHA assessing fines totaling $200,000,

11   to date, against Bancorp."  *Id*.  Bancorp also claimed Cachet failed to implement

12   controls to ensure it would not originate credit transactions to its clients unless such

13   transactions were pre-funded, as it had promised following the MPHR Incident,

14   exposing Bancorp to additional financial risk during the DD Care Incident.  *Id.*

15        On November 5, 2019, Bancorp filed the Interpleader Action in the United

16   States District Court for the District of Delaware (the "Delaware District Court"),

17   requesting leave to deposit the Stake with the court, an order discharging Bancorp

18   from liability related to the Stake, and the distribution of the funds to claimants

19   through interpleader proceedings.  Dkt. 11-5 (Cachet RJN, Ex. 5).

20        Cachet contends Bancorp's termination of the ODFI Agreement and Cachet's

21   ability to originate ACH transactions constituted a breach of the agreement.  *Id.*

22   ¶¶ 107–112.  According to Cachet, Bancorp engaged in tortious conduct by freezing

23   the funds in Cachet's accounts with Bancorp, removing and disbursing these funds

24   without authorization, and blocking Cachet's access to its bank and Remarketer client

25   account information.  *Id.* ¶¶ 104–09; *see also* BA Dkt. 511 (Am. Disclosure State.) at

26   7.  As a result, Cachet was allegedly unable to process ACH transactions for its

27   clients, forced to cease operations as an ACH processor, and became subject to

28   numerous lawsuits from Remarketers, employers, and employees.  AP FAC ¶ 120; BA

4

Dkt. 511 at 4.

Bancorp asserts it validly exercised its option to terminate the ODFI Agreement for safety and soundness reasons, under § 5.2 of the agreement.  Dkt. 1-1 ("Mot. Br.") at 4–5.  Section 5.2 provides in relevant part:

> Bancorp may at its sole discretion terminate this Agreement immediately and without notice in order to ensure compliance with the law and/or assure its regulators of the safety and soundness of its operations relative to Processor.

Summers Decl., Ex. A §5.2.

## II.    Procedural Background

On January 21, 2020, Cachet filed a voluntary petition for Chapter 11 bankruptcy relief in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court").  BA Dkt. 1; AP FAC ¶ 121.  On January 24, 2020, the Delaware District Court stayed the Interpleader Action pending direction from the Bankruptcy Court.  IA Dkt. 247.

As of the filing of the FAC, 192 Proofs of Claim were filed against Cachet's estate in the Bankruptcy Action.  AP FAC ¶¶ 121–24.  In September 2020, Bancorp filed two Proof of Claims against Cachet's estate, later amending one of its claims in August 2021.  *See* Dkts. 11-1, 11-2, 11-3 (Cachet RJN, Exs. 1–3).  Bancorp asserts claims for indemnity under the ODFI Agreement for the attorney's fees it incurred in connection with the MPHR and DD Care Incidents and the Interpleader Action.  *See generally id.*

On February 9, 2021, Cachet and Bancorp entered into a stipulation to seek limited relief from the stay in the Interpleader Action and establish a process for the distribution of the Stake to the Remarketers and litigation of the parties' crossclaims and/or counterclaims.  Summers Decl., Ex. C; Dkt. 11-14 (Cachet RJN, Ex. 14).  On March 9, 2021, the Bankruptcy Court approved the parties' stipulation and granted Bancorp and Cachet leave to file counterclaims and crossclaims in the Interpleader Action.  Dkt. 11-6 (Cachet RJN, Ex. 6).

5

The Bankruptcy Court's Order stated in pertinent part:

> The automatic stay imposed pursuant to 11 U.S.C. §362(a) is hereby
> modified to allow the Debtor, Bancorp, any payroll company that
> contracted directly with the Debtor ("Remarketer") who received
> notice of the remarketer claims bar date in this bankruptcy case and
> any Remarketer who appeared in the action pending in the United
> States District Court for the District of Delaware ("District Court"),
> Case No. 19-02088-MN ("Bancorp Interpleader") to take such actions
> in the Bancorp Interpleader as necessary to participate in the Bancorp
> Interpleader, including entering into the transactions and carrying out
> the disbursements contemplated in the Stipulation attached to the
> Asfaw Declaration in support of the Motion as Exhibit 1 (the
> "Stipulation") and filing responsive pleadings.  Bancorp and the
> Debtor shall also be allowed to file counterclaims and crossclaims in
> the Bancorp Interpleader and to fully participate in Phases 1 through 4
> of the litigation before the District Court as set forth in the Stipulation.
> The Debtor, Remarketers and Bancorp shall also be permitted to enter
> into a stipulation to request the District Court to, inter alia, enter a
> scheduling order that requires the proceedings in the Bancorp
> Interpleader to occur in the phases set forth in the Stipulation in order
> to have the Stake disbursed from the District Court without prejudice
> to the Remarketers recovering the remainder of their claims in this
> bankruptcy case.

*Id.* (footnotes omitted).  On June 11, 2021, the Delaware District Court also approved the parties' stipulation.  IA Dkt. 300.

On July 1, 2021, the Bankruptcy Court granted Cachet's motion to confirm a plan of reorganization, and Cachet's plan became effective on July 15, 2021.  BA Dkt. 682; Dkt. 11-13 (Cachet RJN, Ex. 13).  On July 22, 2021, the Delaware District Court disbursed the Stake in the Interpleader Action pursuant to the parties' stipulation. Dkt. 11-8 (Cachet RJN, Ex. 8); IA Dkt. at 7/22/2021 entry.

On September 14, 2021, Cachet commenced an adversary proceeding against Bancorp in the Bankruptcy Court.  AP Dkt. 1.  On November 4, 2021, Bancorp filed the instant Motion to Withdraw Reference of the Adversary Proceeding.  Dkt. 1.

Cachet's original Complaint in the Adversary Proceeding asserted claims against Bancorp only.  *See* AP Dkt. 1.  On May 31, 2022, Cachet filed its operative

FAC asserting claims against Bancorp and nineteen other individuals and entities. *See generally* AP FAC.  The FAC asserts nineteen claims in total, including seven claims against Bancorp for: (1) breach of contract; (2) negligence; (3) intentional inference with contract; (4) conversion; (5) express indemnity; (6) accounting; and (7) objection to Bancorp's Proofs of Claim.  *Id.* ¶¶ 280–355, 365–77.

Bancorp, joined by Defendants Dime Bank, Romano, and Rubinov, now moves for an order withdrawing reference of the underlying Adversary Proceeding from the Bankruptcy Court.  Cachet opposes the Motion.

## DISCUSSION

### I.   Judicial Notice

Cachet requests this court take judicial notice of various documents filed in the Bankruptcy Action, the Adversary Proceeding, and Interpleader Action, as well as a recent decision from this district.  Dkt. 11 (Cachet RJN); Dkt. 19 (citing *In re Debtor Cachet Fin. Servs.*, 2:22-cv-01362-DMG, Dkt. 17).  Bancorp has not filed an objection to Cachet's requests.

Courts may take judicial notice of court filings and other matters of public record.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006).  Accordingly, the court GRANTS Cachet's requests for judicial notice with respect to any document on which the court relies.  The requests are otherwise DENIED as moot.

### II.   Legal Standard

Pursuant to 28 U.S.C. § 157(a) ("Section 157(a)"), district courts may refer "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 … to the bankruptcy judges for the district."  "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, … and may enter appropriate orders and judgments," subject to review by the district courts.  28 U.S.C. § 157(b)(1).  Bankruptcy judges may also "hear a proceeding that is not a core

proceeding but that is otherwise related to a case under title 11." *Id*. § 157(c)(1).  "In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected." *Id.*

Pursuant to Section 157(d):

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown.  The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d).

This statute "contains two distinct provisions: the first sentence allows permissive withdrawal, while the second sentence requires mandatory withdrawal in certain situations."  *One Longhorn Land I, L.P. v. Presley*, 529 B.R. 755, 759 (C.D. Cal. 2015) (citation and quotation marks omitted).  "Under either provision, the 'burden of persuasion is on the party seeking withdrawal.'"  *Id.* (citation and quotation marks omitted).

## III.   Analysis

Bancorp argues withdrawal is mandatory, or in the alternative, that there is cause to support permissive withdrawal.  *See generally* Mot.  The court addresses each argument in turn.

### A.   Mandatory Withdrawal

"The Ninth Circuit has not squarely addressed mandatory withdrawal, but other circuits have held that 'mandatory withdrawal is required only when [non-title 11] issues require the interpretation, as opposed to mere application, of the non-title 11 statute, or when the court must undertake analysis of significant open and unresolved

8

1    issues regarding the non-title 11 law.'" *In re Tamalpais Bancorp*, 451 B.R. 6, 8 (N.D.

2    Cal. 2011) (quoting *In re Vicars Ins. Agency, Inc.*, 96 F.3d 949, 954 (7th Cir. 1996));

3    *see also In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 995 (2d Cir. 1990).[4]   Courts in

4    this circuit have largely adopted this approach. *Id.* (collecting cases); *see also In re*

5    *Ruby's Diner, Inc.*, No. 8:21-cv-00845-SVW, 2021 WL 4572001, at *1 (C.D. Cal.

6    June 2, 2021); *One Longhorn*, 529 B.R. at 759–60; *In re Temecula Valley Bancorp,*

7    *Inc.*, 523 B.R. 210, 214 (C.D. Cal. 2014).   Additionally, "[t]he mandatory withdrawal

8    provision should be construed narrowly so as to avoid creating an 'escape hatch' by

9    which bankruptcy matters could easily be removed to the district court.'" *In re*

10   *Temecula Valley Bancorp*, 523 B.R. 210, 214 (C.D. Cal. 2014) (quoting *In re Vicars*,

11   96 F.3d at 952) (quotation marks omitted).

12       Here, all of Cachet's claims against Bancorp, aside from Cachet's objection to

13   Bancorp's Proofs of Claim, arise from state law. *See* AP FAC ¶¶ 280–355.   As such,

14   Cachet does not affirmatively assert any claims arising from non-title 11 federal law

15   that would require substantial interpretation of the non-title 11 statute. *See In re*

16   *Tamalpais Bancorp*, 451 B.R. at 8.

17       Bancorp argues its defense to Cachet's claims "will require material

18   consideration of a complex body of law related to ACH transfers, banking regulations,

19   and the safety and soundness requirements for financial institutions." Mot. Br. At 10.

20   Specifically, Bancorp asserts § 5.2 of the ODFI Agreement permitted it to terminate

21   the agreement "immediately and without notice in order to ensure compliance with

22   law and/or assure its regulators of the safety and soundness of its operations relative to

23   [Cachet]," as a result of the MPHR and DD Care Incidents. *Id.* At 12 (citing Summers

24   Decl., Ex. A § 5.2).   According to Bancorp, Cachet's clients' failure to comply with

---

26   [4] "The Ninth Circuit has suggested that mandatory withdrawal hinges 'on the presence

27   of substantial and material questions of federal law.'" *One Longhorn*, 529 B.R. at 759

     (quoting *Sec. Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers*,

28   124 F.3d 999, 1008 n. 4 (9th Cir. 1997)).

1   federal regulations, unstopped by Cachet, exposed Bancorp to material and

2   unnecessary financial risk that justified its termination of the ODFI Agreement to

3   prevent additional deficits and ensure compliance with federal law. *Id.* At 13.

4   Bancorp, thus, argues that "[d]etermining whether Bancorp properly terminated the

5   ODFI Agreement to maintain Bancorp's safety and soundness under the

6   circumstances of the massive schemes perpetrated by Cachet's customers will involve

7   the interpretation of numerous federal laws and regulations that affect interstate

8   commerce, including, but not limited to regulations from the FDIC and the Federal

9   Reserve." Mot. Br. at 12.  The court disagrees.

10   "[T]he weight of authority places emphasis on what *issues* are to be addressed

11   rather than what *statutes* are involved." *In re Tamalpais Bancorp*, 451 B.R. at 9

12   (emphasis in original).  The essence of Bancorp's defense appears to be that "the

13   schemes perpetrated by Cachet's customers" put Bancorp at "financial risk" and risk

14   of "supervisory actions and third-party claims from Cachet clients," such that it was

15   justified in terminating the ODFI Agreement for safety and soundness reasons. *Id*. at

16   13.  However, the question of whether Bancorp's unilateral termination of the ODFI

17   Agreement was necessary or justified "to ensure compliance with law and/or to assure

18   its regulators of the safety and soundness of its operations relative to [Cachet]" is

19   separate from the question of whether Cachet's *clients* violated federal laws and

20   regulations.

21   Although the statutes and regulations cited in the Motion provide relevant

22   background as to why Cachet's clients' conduct during the MPHR and DD Care

23   Incidents may have been improper, Bancorp has not identified any specific provisions

24   that would require significant interpretation for it to defend successfully against

25   Cachet's claims.  *See* Mot. Br. at 12–13.  As the FAC alleges MPHR's principal

26   (Mann), Kauftheil, Rubinov, and DD Care, engaged in fraudulent conduct, Cachet

27   does not appear to dispute Bancorp's assertion that its clients violated federal statutes

28   and regulations.  *See* AP FAC ¶¶ 52–57, 61–103.  Accordingly, the question of

whether Bancorp's termination of the ODFI Agreement was valid under § 5.2 of the agreement would appear to turn on principles of contract interpretation and factual determinations regarding Cachet and Bancorp's conduct, and not "substantial and material" interpretation of non-title 11 federal law.

Other issues to be addressed include, inter alia, whether Bancorp is entitled to indemnity and whether Bancorp's conduct leading up to and following termination of the ODFI Agreement caused Cachet's alleged harm.  While application of the cited statutes and regulations may assist the court in answering these questions or interpreting the terms of the ODFI Agreement, this is not sufficient to mandate withdrawal.  *See One Longhorn*, 529 B.R. at 760 (finding "the mere fact that federal non-bankruptcy law may need to be <u>applied</u> does not make withdrawal mandatory," and that "merely stating without elaboration that 'substantial and material analysis' will be required" was insufficient to support mandatory withdrawal) (emphasis in original)); *see also In re Tamalpais Bancorp*, 451 B.R. at 9 ("[A] movant must do more than merely suggest that novel issues of law could possibly arise in a bankruptcy proceeding.").

Accordingly, Bancorp has failed to show that non-title 11 federal issues "require the interpretation, as opposed to mere application, of the non-title 11 statute," or that the Bankruptcy Court "must undertake analysis of significant open and unresolved issues" regarding non-title 11 federal law.  *See In re Tamalpais Bancorp*, 451 B.R. at 8.  The court, therefore, finds mandatory withdrawal is not appropriate under Section 157(d).

## B.    Permissive Withdrawal

A district court "may" withdraw reference of the Adversary Proceeding "for cause shown."  28 U.S.C. § 157(d).  "In determining whether cause exists, a district court should consider the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors."  *Sec. Farms*, 124 F.3d at 1008.

11

1             *1.    Core and Non-Core Claims*

2         A district court "'should first evaluate whether the claim is core or non-core,

3   since it is upon this issue that questions of efficiency and uniformity will turn.'" *One*

4   *Longhorn*, 529 B.R. at 762 (quoting *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101

5   (2d Cir. 1993)).  "Core proceedings include, but are not limited to … (B) allowance or

6   disallowance of claims against the estate…" and "(C) counterclaims by the estate

7   against persons filing claims against the estate[.]"  28 U.S.C. § 157(b)(2).  "Actions

8   that do not depend on bankruptcy laws for their existence and that could proceed in

9   another court are considered 'non-core.'"  *Sec. Farms*, 124 F.3d at 1008.

10        "The Ninth Circuit has suggested that permissive withdrawal is appropriate

11  where 'non-core issues predominate.'"  *One Longhorn*, 529 B.R. at 763 (quoting *Sec.*

12  *Farms*, 124 F.3d at 1008).  However, "[t]he determination of whether claims are core

13  or non-core is not dispositive of a motion to withdraw a reference."  *Id*.  Ultimately,

14  "[i]t is within a district court's discretion to grant or deny a motion for permissive

15  withdrawal of reference; that decision will not be disturbed unless the court abuses its

16  discretion."  *Sec. Farms*, 124 F.3d at 1008 (internal quotations marks and citation

17  omitted).

18        Cachet has asserted seven claims against Bancorp for: (1) breach of contract,

19  (2) negligence, (3) intentional inference with contract, (4) conversion, (5) express

20  indemnity, (6) accounting, and (7) objection to Bancorp's Proofs of Claim.  AP FAC

21  ¶¶ 280–355, 365–77.  Bancorp does not dispute that Cachet's objection to Bancorp's

22  Proofs of Claim is a core claim.  Mot. Br. at 17.  The parties, however, dispute

23  whether Cachet's remaining state-law claims are core or non-core claims and whether

24  non-core issues predominate.  *See id.* at 16–17.

25        Cachet argues the Adversary Proceeding qualifies as a "core proceeding" under

26  28 U.S.C. § 157(b)(2)(C) because its claims against Bancorp are "counterclaims by

27  the estate against persons filing claims against the estate."  Opp'n at 20.  Bancorp

28  argues that even if Cachet's state-law claims qualify as "counterclaims" under the

1  statute, they should be considered non-core under the Supreme Court's holding in

2  *Stern v. Marshall*, 564 U.S. 462 (2011), as they "go far beyond any issues raised by

3  Bancorp's proof of claim with respect to Bancorp's claimed right to indemnification

4  under the ODFI Agreement." Mot. Br. at 16.

5       In *Stern*, 546 U.S. at 501–02, the Supreme Court held that "even though

6  bankruptcy courts are statutorily authorized to enter final judgment on a class of

7  bankruptcy-related claims, Article III of the Constitution prohibits bankruptcy courts

8  from finally adjudicating certain of those claims." *See also Exec. Benefits Ins. Agency*

9  *v. Arkison*, 573 U.S. 25, 28 (2014). The Supreme Court has referred to such claims as

10 "*Stern* claims," which it defined as "claim[s] designated for final adjudication in the

11 bankruptcy court as a statutory matter, but prohibited from proceeding in that way as a

12 constitutional matter." *Id.* at 30–31. Such claims are considered non-core claims, but

13 may be referred to the bankruptcy court for proposed findings of fact and conclusions

14 of law, subject to de novo review by the district court.[5] *Id.* at 36.

15      Cachet does not respond to Bancorp's contention that its state-law claims are

16 *Stern* claims and appears to concede this point. Accordingly, the key question is

17 whether the non-core issues raised in the state-law claims predominate over the issues

18 raised in Cachet's core claim for disallowance of Bancorp's Proofs of Claim. The

19 court finds they do not.

20      Cachet's core claim for disallowance alleges Bancorp is not entitled to

21 indemnification because "[a]ny losses sustained by Bancorp are the direct result of its

22 own negligence or willful misconduct," in connection with its termination of the

23 ODFI Agreement and the freezing of and transfer of the Stake from Cachet's accounts

24

25  _____

26  [5] "The [bankruptcy] statute permits *Stern* claims to proceed as non-core within the
    meaning of § 157(c)." *Arkison*, 573 U.S. at 36. "[W]hen a bankruptcy court is

27 presented with such a claim, the proper course is to issue proposed findings of fact and
    conclusions of law." *Id*. at 31. "The district court will then review the claim *de novo*

28 and enter judgment." *Id.*

13

with Bancorp.  AP FAC ¶¶ 109–118, 370–372.  Cachet's state-law claims arise from and are related to the same events, transactions, and agreements as Bancorp's disallowance claim, and their resolution would require the same findings of fact and conclusions of law.  *Compare* AP FAC ¶¶ 280–355 *with* Dkts. 11-1, 11-2, 11-3.

Accordingly, the court finds non-core issues do not predominate over core issues in the Adversary Proceeding.

### 2.    *Judicial Efficiency, Delay, and Costs*

Next, Bancorp argues judicial efficiency weighs in favor of immediate withdrawal because the Bankruptcy Court may only make proposed findings of fact and conclusions of law regarding Cachet's state-law claims, subject to de novo review by this court.  Mot. Br. at 16.  Bancorp further notes that the Bankruptcy Court cannot conduct the jury trial Cachet has demanded absent Bancorp's express consent, which it will not provide.  *Id.* at 17.  According to Bancorp, "[i]t would be a waste of judicial resources to require the Bankruptcy Court to become intimately familiar with the unique facts and law governing this Adversary Proceeding, … only to have that time and effort duplicated by a district court when the case is withdrawn for jury trial." *Id.* at 19.

Cachet responds that a party's assertion of the right to a jury trial does not constitute good cause for permissive withdrawal of the reference, and "a bankruptcy court's pre-trial management, which includes discovery, motions, and pretrial conferences, does not in any way diminish a party's right to a jury trial."  Opp'n at 21 (citing *In re Healthcentral.com*, 504 F.3d 775, 787 (9th Cir. 2007)).  Cachet further argues that having this court hear such matters would thwart judicial efficiency given the Bankruptcy Court's familiarity and expertise in handling Cachet's bankruptcy, and create potential disruption of the resolution of that bankruptcy.  *Id.*  Cachet also notes that this court's heavy caseload, limited resources, and need to prioritize other matters further tips the efficiency balance against withdrawal.  *Id.*  The court agrees with Cachet.

The Ninth Circuit has held that "bankruptcy courts are not divested of pre-trial jurisdiction over matters which they ultimately may be unable to decide." *In re Cedar Funding, Inc.*, 419 B.R. 807, 819 (B.A.P. 9th Cir. 2009) (citing *SigIn re Healthcentral.com*, 504 F.3d at 787). Instead, "the bankruptcy court is "permitted to retain jurisdiction over the action for pre-trial matters." *In re Healthcentral.com*, 504 F.3d at 787. As the Ninth Circuit has explained, "allowing the bankruptcy court to retain jurisdiction over *pre-trial* matters, does not abridge a party's Seventh Amendment *right to a jury trial*." *Id.* (emphasis in original). Furthermore, "requiring that an action be immediately transferred to district court simply because of a *jury trial right* would run counter to our bankruptcy system," as Congress has empowered the bankruptcy courts to "hear" title 11 actions and enter relevant "orders." *Id.* (citing 28 U.S.C. § 157(b)(1)) (emphasis in original). "Only by allowing the bankruptcy court to retain jurisdiction over the action until *trial is actually ready* do we ensure that our bankruptcy system is carried out." *Id.* at 788 (emphasis in original).

A review of the docket for the Adversary Proceeding demonstrates that several Defendants to the FAC, including Bancorp, have filed motions to dismiss Cachet's claims, which are currently set to be heard on March 23, 2023. AP Dkts. 45, 54, 80, 108, 176. Withdrawing reference to the Adversary Proceeding at this time would result in further costs and delay resolving pretrial motions which could narrow the issues or "obviate the need for trial altogether." *See Hjelmeset v. Hung*, No. 5:17-cv-05697-BLF, 2018 WL 558917, at *5 (N.D. Cal. Jan. 25, 2018); *see also In re Solid Landings Behav. Health, Inc.*, No. 8:20-cv-01167-JGB, 2020 WL 5934304, at *3 (C.D. Cal. July 28, 2020) (noting a bankruptcy court's rulings on pre-trial matters "[were] likely to narrow the issues, draw attention to the most important areas of dispute, and provide the Court with valuable (but non-binding) guidance on issues the Bankruptcy Court [was] most familiar with").

The Bankruptcy Court is also in a better position to handle these pre-trial matters because it has been handling Cachet's bankruptcy since January 2020 and the

Adversary Proceeding since September 2021, and is more familiar with the facts and issues than this court. *See In re Canter*, 299 F.3d 1150, 1154 (9th Cir. 2002) (finding district court's withdrawal of reference "was an inefficient allocation of judicial resources" where bankruptcy court was more familiar with the facts and issues of the case); *see also In re Solid Landings*, 2020 WL 5934304, at *3 (recognizing the bankruptcy court's ability to conserve judicial resources "by conducting pre-trial management in the form of discovery, pre-trial conferences, and ruling on routine motions"). As such, judicial efficiency weighs heavily against withdrawal at this stage of the proceedings.

### 3. *Uniformity of Bankruptcy Administration*

Bancorp argues withdrawal of the reference would not impair the uniform administration of the bankruptcy proceeding because the Bankruptcy Court has confirmed Cachet's plan of reorganization and the Bankruptcy Action is concluded except for claims administration. Mot. Br. at 19–20. Cachet responds withdrawal would jeopardize the uniformity of bankruptcy administration as the Bankruptcy Court retained jurisdiction over all claims against the estate, including Bancorp's proof of claims and the estate's claims against creditors. Opp'n at 23. The court agrees with Cachet.

Although the Bankruptcy Court has confirmed Cachet's plan of reorganization, the Bankruptcy Action has not yet concluded and the outcome of the parties' claims may have a significant impact on the administration of the bankruptcy. Accordingly, this factor weighs against withdrawing reference of the Adversary Proceeding.

### 4. *Preventing Forum Shopping*

Bancorp asserts that withdrawing reference of the Adversary Proceeding will not encourage forum shopping because Cachet should have filed its claims in the

Delaware District Court pursuant to the ODFI Agreement's forum selection clause.[6]
Mot. Br. at 20–21.  According to Bancorp, it intends to file a motion to transfer the
Adversary Proceeding to the Delaware District Court if this court grants the Motion
and withdraws the reference.  *Id.* at 21.

Cachet responds that denial of the Motion will prevent Bancorp from engaging
in impermissible forum shopping because its adversary complaint is merely a
counterclaim to Bancorp's Proofs of Claim in the Bankruptcy Action.  Opp'n at 23–
24.  Cachet, in turn, contends the Interpleader Action should have been filed in this
district pursuant to the ODFI Agreement's forum selection clause, and states it intends
to move to transfer the Interpleader Action to the Bankruptcy Court if the subject
Motion is denied.  Opp'n at 23–24.

The question before the court is whether withdrawing the reference to the
Bankruptcy Court on the subject Motion would encourage or prevent forum shopping
between this court and another court.  *See Sec. Farms*, 124 F.3d at 1009 (rejecting the
argument that withdrawal of reference after the bankruptcy court issued an order
remanding state law claims encouraged forum shopping, as the bankruptcy court's
dispositive orders were subject to the approval of the district court).  Neither
Bancorp's stated intent to file motions to transfer the Adversary Proceeding to the
Delaware District Court nor Cachet's stated intent to file a motion to transfer the
Interpleader Action to the Bankruptcy Court are before this court on the subject
Motion, and the court will not analyze the potential merits of either proposed motion
at this time.[7]

---

[6] The ODFI Agreement's forum selection clause requires any action initiated by
Cachet "arising out of or relating to" the agreement to be filed in Delaware, and any
action initiated by Bancorp "arising out of or relating to" the agreement to be filed in
Los Angeles, California.  Summers Decl., Ex. A § 17.1.

[7] Neither Bancorp nor Cachet state why they have not already filed motions to transfer
the Adversary Proceeding or the Interpleader Action with the Bankruptcy Court and

As neither party discusses whether granting or denying the *subject Motion* would encourage or prevent forum shopping—rather than hypothetical motions the parties intend to file if this Motion were to be granted or denied—this factor does not weigh in favor or against permissive withdrawal.

    5.    *Conclusion Regarding Permissive Withdrawal*

In sum, the court finds non-core issues do not predominate over core issues in the Adversary Proceeding, and that considerations of (1) judicial efficiency, delay, and costs to the parties and (2) the uniformity of bankruptcy administration weigh against withdrawal.  The question of the prevention of forum shopping is a neutral factor that does not weigh in favor or against withdrawal.  Accordingly, the court DENIES Bancorp's request for permissive withdrawal.

## **CONCLUSION**

For the foregoing reasons, the court DENIES Bancorp's Motion in its entirety.


IT IS SO ORDERED.


Dated: February 6, 2023

FERNANDO L. AENLLE-ROCHA
United States District Judge

Delaware District Court, respectively, if they believe either action was filed in the wrong forum.  Similarly, Bancorp and Cachet have not stated why grant or denial of the subject Motion would make such transfer more appropriate or necessary.